WILLIAMS *v.* ALEXANDER.

Opinion delivered November 10, 1919.

1. EQUITY JURISDICTION—RELIEF AGAINST JUDGMENT—UNAUTHORIZED APPEARANCE.—Equity has power to relieve against a judgment rendered upon the unauthorized appearance of an attorney.

2. SAME—SAME—SAME.—The records of a court, regular upon their face, have a large degree of sanctity attached to them, and are not to be lightly. overcome; and when the appearance of the parties is entered by regular practicing attorneys, the evidence of a want of authority must be clear and satisfactory in order to warrant a court of equity in relieving against the judgment.

3. EQUITY JURISDICTION—RELIEF AGAINST JUDGMENT—NO MERITORIOUS DEFENSE.—Equity will not interfere to relieve against a judgment obtained without service when the defendant has no meritorious defense to the action in which such judgment was obtained.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Will G. Akers,* for appellants.

The appellants were not served with process, nor were they present at the trial or sale, and the decree and sale should be set aside, not only as to Robert but also as to John Henry Jefferson, Ada, Annie and Esther, as they were not served with process, nor were they present at the trial or sale or represented by counsel. These heirs are willing to pay appellee all sums expended on account of the land purchased, improving it and taxes on it. The attorneys did not represent these appellants, and they were not served, nor was any defense made for them and the decree was void as to them.

*Trimble & Trimble,* for appellees.

The appellants were duly represented by attorneys and defense made for them. 103 Ark. 513. The appearance of attorneys as here raises a *prima facie* presumption of authority. 26 Ark. 17; 25 *Id.* 476; 36 *Id.* 462; 40 Ark. 124. Counsel was employed and represented them. 22 Ark. 164; 104 *Id.* 1. Walls & Reed represented them. 104 Ark. 322; 123 *Id.* 156; 109 *Id.* 82. The findings are correct and the decree should be affirmed.

STATEMENT OF FACTS.

Appellants instituted this suit in the Lonoke Chancery Court against appellees to set aside a decree in that court which they allege had been obtained without service

upon them or any authorized appearance on their behalf. The facts are as follows:

Gabe Williams, a colored man, had executed a mortgage on 200 acres of land to secure certain advances and supplies furnished him. He had given a separate mortgage on forty acres of land to secure an indebtedness for advances and supplies. These mortgages were given to the same person. Gabe Williams died and left surviving him his widow and eleven children. A dispute arose between them and the mortgagee as to the amount due under the mortgage. Early in 1912, the mortgagee threatened to bring suit against them for the 200-acre tract of land, and they entered into a written agreement with Jas. B. Reed and Charles A. Walls, practicing attorneys, to defend them in the suit. By the terms of the agreement they were to give them one-half of the land in the event it was recovered for them.

Louise Prioleau, the mortgagee, instituted two suits against them to recover the 200-acre tract of land, one being an action of unlawful detainer, and the other an action of ejectment. Both actions were carried to the Supreme Court. The first case was commenced early in 1912, and is reported in 104 Ark., p. 322, under the style of *Prioleau* v. *Williams.* The second suit is reported in 123 Ark., p. 156, under the style of *Williams* v. *Prioleau.* The Williams heirs and their attorneys had numerous conversations with regard to the defense of the suits for the 200 acres of land, and they talked of the probability of a suit being instituted against them for the 40-acre tract of land. Their attorneys told them that the same accounts were involved in both mortgages and that the same defense would have to be made in each case. A suit to foreclose the mortgage on the 40-acre tract of land was instituted by Louise Prioleau against the widow and heirs of Gabe Williams, deceased, early in 1913, and a decree of foreclosure was entered of record on the 7th day of July, 1913. No service was had upon the defendants, but Reed and Walls appeared for them and vigorously contested the suit. They secured a postponement of the

sale of the land until the 27th day of December, 1913, in order that the Williams heirs might have an opportunity to pay off the mortgage and prevent the sale. The land was sold on the day last mentioned, and C. N. Alexander became the purchaser at the sale. Most of the Williams heirs were present at the sale. Alexander went into possession of the land and has been in possession ever since, claiming to be the owner and making valuable improvements on the land. The present suit was instituted on the 6th day of November, 1916; and the lands at that time had greatly enhanced in value.

It is the contention of appellants, who are the plaintiffs in the present suit, that Reed and Walls were not authorized to enter their appearance to the foreclosure suit against the 40-acre tract of land, and that they did not know that they had done so.

On the other hand it is the contention of appellees, who are the defendants in this action, that Reed and Walls were employed by the Williams heirs to represent them in the foreclosure suit in question, and that pursuant to that authority they entered their appearance to the suit.

The widow of Gabe Williams is dead. They had eleven children, all of whom signed the contract with Reed and Walls for the defense of the suits against the 200-acre tract of land. Nine of them testified in the case at bar. They said that their mother employed Reed and Walls to defend in the suit to foreclose the mortgage on the forty-acre tract; that she had no authority to represent them in the matter, but only had authority to represent herself and two others of the children. They testified positively that no service of summons was ever had upon them and denied that they had ever authorized their mother, or any one else, to employ counsel in the case for them, or to enter their appearance to the action.

On the other hand, both Reed and Walls testified that they had been employed by the Williams heirs to represent them in the suit to foreclose the mortgage on the forty-acre tract, and that pursuant to that authority

they entered their appearance to the action and made a vigorous defense thereto.

According to their testimony, the same items were included in the mortgage on the forty-acre tract that were in the mortgage on the 200-acre tract. The same defense was made in each case and a material reduction of the accounts was secured by them. They had numerous conversations and meetings with the Williams heirs and planned to defend the suit against the forty-acre tract as well as those against the 200-acre tract. The foreclosure suit against the forty-acre tract was heard on oral testimony. All of the Williams heirs were present, and some of them testified in the case. All of them were present at the sale.

Judge Trimble was attorney for the mortgagee and testified that, while he could not recollect definitely, he thought that most, if not all, of the Williams heirs were present when the foreclosure suit was heard and determined. He also stated that he thought that most, if not all, of them were present at the sale. His testimony is corroborated by that of a son of the mortgagee. C. N. Alexander, the purchaser at the foreclosure sale, also testified that he thought that most, if not all, of the Williams heirs were present at the sale. Other facts will be stated or referred to in the opinion.

The chancellor found the issues in favor of appellees and it was decreed that the complaint be dismissed for want of equity. The case is here on appeal.

HART, J., (after stating the facts). (1-2) The power of the chancery court to act in a proper case to relieve the party against a judgment rendered against him upon the unauthorized appearance of an attorney is not a new thing in this State. In the early case of *Sneed* v. *Town,* 9 Ark. 535, this court recognized that a court of chancery would relieve a party from a judgment rendered against him in consequence of the totally unauthorized acts of an attorney. The general rule is that a defendant against whom a judgment has been rendered on an unauthorized appearance may be relieved against it. 3 Cyc. 532. The

records of a court regular upon their face have a large degree of sanctity attached to them and are not to be lightly overcome. Hence where the appearance of the parties is entered by regular practicing attorneys, the evidence of a want of authority must be clear and satisfactory in order to warrant a court of equity in relieving the party against the judgment. *Wheeler* v. *Cox* 56 Iowa, 36, and *Harshey* y. *Blackmarr,* 20 Iowa 161; 89 Am. Dec. 520, and *Winters* v. *Means,* 25 Neb. 241, 13 Am. St. Rep. 489.

(3) In *State* v. *Hill,* 50 Ark. 458, this court held that equity will not interfere to relieve against a judgment obtained without service where the defendant has no meritorious defense to the action in which such judgment was obtained. This rule has been uniformly followed ever since. In that case the court also said that one who is aggrieved by a judgment rendered in his absence must show not only that he was not summoned, but that he did not know of the proceedings in time to make defense, in order to get relief in equity.

Tested by the well known principles just announced, we are of the opinion that the chancellor was right in denying the appellants the relief prayed for. It is true there were nine of them and they each testified in positive terms that they were not served with summons; that they did not employ Reed and Walls and did not authorize them to enter their appearance to the action. It seems to us, however, that they are contradicted by the facts and circumstances in the case. They admit that they employed Reed and Walls to represent them in the suits against the 200 acres of land and that their attorneys made a vigorous defense to these actions. During the pendency of these actions, numerous consultations were had between the attorneys and their clients. The suit to foreclose the mortgage on the forty-acre tract was brought during the pendency of these actions. The defense in the two cases was largely the same. It was natural that they should have employed the same attorneys to represent them in both suits. The attorneys so testi-

fied, and they were corroborated in this respect by the attorney for the plaintiff in the foreclosure suit and by the son of the plaintiff who attended to her interest in the matter. The purchaser at the sale also testified that most, if not all of them, were present at the sale. The parties made a common defense to the suits involving the 200-acre tract of land, and it is not natural that only a part of them should have employed attorneys in the suit to foreclose the mortgage on the forty-acre tract. The parties all lived within the jurisdiction of the court, either living in the county where the suit was pending, or in adjoining counties. It was shown that one of the appellants accepted his share of the proceeds of the sale, while others admitted being present at the foreclosure sale, and some of them admitted being present at the trial.

When the whole record is read and considered together, we are of the opinion that the appellants have not made out their case by that clear and satisfactory proof which is required in cases of this sort.

It follows that the decree must be affirmed.