Edgar DUPREE, Jr. *v.* STATE of Arkansas

CR 80-132                                          607 S.W. 2d 356
Supreme Court of Arkansas
Opinion delivered November 10, 1980

*Arnold, Hamilton & Streetman*, for appellant.

*Steve Clark*, Atty. Gen., by: *Mary Davies Scott*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Chief Justice. Appellant was found guilty of manslaughter and sentenced to ten years imprisonment on October 12, 1979. He had been tried on a charge of first degree murder of his brother-in-law, George Parker, Jr., arising from an incident on May 7, 1977, but was found guilty of the lesser offense. The charge was filed on May 10, 1977. This appeal is based upon the trial court's denial of several pretrial motions. They were: (1) a motion to dismiss the charge on account of the state's failure to bring him to trial within three terms of court; (2) a motion to prohibit witnesses whose names were belatedly furnished to defense counsel from testifying; (3) a demurrer and motion to dismiss the charge on account of a defect in the name of the person charged in the information; and (4) a motion to quash the information. We find reversible error in regard to the second motion.

On September 11, 1978, appellant moved that the state be required to file a "bill of particulars" including the names of every person known to the state who had any information, the addresses of such persons, the substance of their expected testimony and a statement whether the state intended to use them in the trial of the case. At a pretrial hearing on September 28, 1979, after the case had been set for trial on October 12, 1979, the court ordered the state to furnish counsel for defendant a list of witnesses which it proposed to use along with their addresses and an itemization of any other evidence in the state's possession by October 2, 1979. On October 2, 1979, a deputy prosecuting attorney addressed a letter to appellant's attorney advising him that the state intended to call Wallace Champion, Leroy McCowan, Robert Lee Pen and Evelyn Dupree. In spite of the fact that the charges had been pending for more than two years, the letter included the following: "At the present time, this is a complete list of the witnesses and evidence available to the State. If anything further turns up, you shall be advised promptly." Yet, on October 10, 1979, subpoenas were issued on behalf of the state for Shela [Sheila] Wood, Jacqueline [Jacqulin] Rodgers, Bear Webb and Ernest Thomas [Thompson] and on October 11, 1979, for Myena [Murna]

Bryan. On October 12, appellant's attorney requested that the court deny the prosecution the right to call Sheila Wood, Jacqulin Rodgers, Ernest Thompson, Ollie Mae Parker and Murna Bryan as witnesses. Appellant's attorney stated that he was not made aware of the evidence these witnesses would introduce, that the names of Wood, Rodgers, and Thompson had not been furnished him until approximately 2:15 p.m. on October 10, and that on October 11 at 4:00 p.m., he was given the names of Parker and Bryan. The attorney stated that he had not had an opportunity to talk with any of these witnesses and had no idea what their testimony would be or the purpose of their being called. He said that on the preceding day he had called Sheila Wood and Ernest Thompson by telephone and had made appointments for each of them to come to his office, but both failed to appear. He said that he had tried to reach Jacqulin Rodgers by telephone, but had found that she was working and could not be reached. The prosecuting attorney said that he had located these witnesses himself during the preceding two days and that, if a request had been made he would have been glad to have told appellant's attorney the "substance of their involvement in the matter." He said that Murna Bryan was a nurse who had been located in an effort to prove the corpus delecti after it was discovered that the attending physician did not have a good recollection of the cause of the death of George Parker, Jr. After the prosecuting attorney had been sworn and had testified that he had advised the trial judge on September 28 that he had furnished the contents of his investigative file to defense counsel "as of June 15," that he had given Mr. Streetman a list of all witnesses "we had as of October 2," that he had furnished appellant's attorney with a list of all witnesses as "I have received them," and that he had made no attempt to withhold anything from appellant's attorney, the trial judge overruled appellant's motion. Appellant's attorney was permitted thereafter to cross-examine the deputy prosecuting attorney, apparently for the record. This witness then admitted that he did not know of any reason why the state had not been aware that Ollie Mae Parker would be called as a witness and why, with reasonable diligence, the prosecuting attorney, who had filed the charge and his deputy, or the present incumbent of these offices, could not have learned the names of all these witnesses and furnished them to

appellant's attorney at an earlier date. The trial judge then noted that appellant had objected to each of these persons being permitted to testify, thus obviating the requirement that appellant register an objection when each of them was called.

There was really no prejudice to appellant resulting from the testimony of Murna Bryan, Ernest Thompson or Sheila Wood. The witness Bryan simply testified as to the condition of George Parker, Jr., when he was brought into the emergency room at the hospital in Crossett on May 7, 1977. She described the wounds and the blood she saw on the clothing and the body. Dupree testified and admitted that he had been armed with a knife when he and Parker had an encounter and that he had used the knife in self-defense, or to keep Parker off him. Dupree said that he did not think that Parker had ever seen the knife, but that after Parker was cut, he had bled, looked at himself and at Dupree and had run. There does not seem to have been any serious question about the cause of death, so permitting this witness to testify under the circumstances was not sufficiently prejudicial to justify a reversal for abuse of the trial court's discretion.

Sheila Wood testified only in rebuttal. She controverted the testimony of Dupree that the physical encounter between the two was commenced by Parker's pushing him and that, before Parker was cut, the two had fallen to the ground. Her testimony was cumulative to that of Evelyn Dupree and Jacqulin Rodgers. Thus, it was not sufficiently prejudicial to constitute reversible error. The only testimony by Thompson related to his seeing Parker run away from the scene of the encounter between Dupree and Parker, and to Parker's condition when Thompson went to the place toward which he had seen Parker running and found Parker lying on the ground.

Ollie Mae Parker was the mother of George Parker, Jr., and Evelyn Dupree. She testified that, on the evening of the encounter between her son and son-in-law, Evelyn had come running back to the Parker house and was upset. She said that she went outside and saw that appellant had driven her daughter's car and positioned it so she and her daughter could not use it to go see about George Parker, Jr., that

appellant had stated that he had cut that "so-and-so" and that he was going to wind up killing all of the Parkers. She also told of the condition in which she later found her son. Appellant himself testified that, after his encounter with Parker, he had gotten in the car and had driven home, which was next door to the Parker house, where he met Mrs. Ollie Mae Parker and her family, who were on their way to see Parker, but denied having blocked the driveway. Dupree could not well have been surprised to learn that Mrs. Parker would be a witness. Investigation of the case should have revealed the nature of the testimony she might be expected to give. A defendant in a criminal case cannot rely upon discovery as a total substitute for his own investigation.

On the other hand, the record does not disclose any means that appellant had of anticipating that Jacqulin Rodgers would testify or what her testimony might be. The testimony abstracted does not reveal that appellant knew that Jacqulin Rodgers, Sheila Wood, and a man named Arthur had been in an automobile from which George Parker, Jr., had alighted before the encounter between him and appellant on the grounds of a place known as Willie Penn's Bar-b-que only a short distance from the dwelling house of the elder Parkers. Her testimony was as damaging to appellant and his defense as that of any other witness. She testified that she had never been contacted by anyone about the case until she was served with a subpoena the day before the trial.

The state seeks to excuse its failure to comply with the court's order on appellant's motion for discovery by stating that the deputy prosecuting attorney who participated in the trial had only located the witnesses, to which appellant objected, two days before the trial, that he had learned that certain of the witnesses whose names he had furnished were unavailable, and thereafter had sought replacement witnesses. The state called only one witness on its original list. Even though the case had been pending over two years, the state's attorneys, only ten days before trial, stated that certain witnesses would be called and then discovered they were not available. Even though there may have been no lack of good faith, diligence on the part of the prosecuting attorney would have prevented appellant from being misled as to the

witnesses with whom he would be confronted. The admission of a lack of prosecutorial diligence in the matter of witnesses was certainly appropriate. Even so, only the mechanics of compliance rest upon the prosecuting attorney. The discovery rules require that he make disclosure upon timely request. His obligations under Rule 17, Arkansas Rules of Criminal Procedure, extend to material and information within the knowledge, possession and control of members of his staff and of any others who have participated in the investigation or evaluation of the case and who regularly report, or with reference to the particular case, have reported, to his office. It would be difficult to believe that there had been no investigation that revealed that Jacqulin Rodgers was a potential witness. In *Williamson* v. *State*, 263 Ark. 401, 565 S.W. 2d 415, we pointed out that Rule 17.1 imposes a duty upon the state to disclose all material and information to which a party is entitled in sufficient time to permit his counsel to make beneficial use of it.

It is quite possible that the trial court might have rendered the state's failure to earlier furnish the names of the witnesses it used harmless by granting appellant a continuance or by recessing the trial until appellant's attorney could have an adequate interview with the witnesses. See Rule 19.7, Arkansas Rules of Criminal Procedure, Ark. Stat. Ann. vol. 4A (Repl. 1977); *Hughes* v. *State*, 264 Ark. 723, 574 S.W. 2d 888. But the court never gave any indication that this relief was available to appellant. The court's overruling of appellant's motion before his attorney could cross-examine the deputy prosecuting attorney was certainly not indicative of the availability of such relief.

Appellant argues that the trial court erred in denying his motion to dismiss for failure to try him within three terms of court as required by Rule 28. His original motion for dismissal for failure to bring him to trial within three terms of court was based solely upon the provisions of Rule 28. Arkansas Rules of Criminal Procedure, supra. The critical dates disclosed by the record and by statute are:

| March 21, 1977 | Term of court began |
| May 5, 1977 | Appellant arrested |

| | |
|---|---|
| May 10, 1977 | Information filed |
| June 13, 1977 | Appellant admitted to bail |
| October 17, 1977 | Term of court began |
| January 27, 1978 | Entry on court's docket: Defendant ill in Trumann with flu. Pass for plea. Set for trial on June 6, 1978 |
| March 20, 1978 | Term of court began |
| June 6, 1978 | Date case set for trial |
| October 1978 | Employment of Bruce Switzer as appellant's attorney terminated |
| October 16, 1978 | Term of court began |
| March 19, 1979 | Term of court began |
| June 28, 1979 | Appellant arraigned |
| September 19, 1979 | Motion to dismiss filed |
| September 28, 1979 | Motion to dismiss denied, without either party offering evidence |
| October 12, 1979 | Appellant's trial held and motion to dismiss again denied |
| October 15, 1979 | Term of court began |

The term of court during which appellant was arrested and charged is excluded. *State* v. *Messer*, 269 Ark. 431, 601 S.W. 2d 857. It is clear, however, that three terms of court passed before appellant was brought to trial unless there were excluded periods under Rule 28.3. The period of delay resulting from a continuance granted at the request of the defendant or his counsel is such an excluded period. Rule 28.3 (c), Arkansas Rules of Criminal Procedure, supra. The burden was on the state to show that a period should be excluded. The trial judge denied the motion when no evidence was presented on the basis of the docket entry dated January 27, 1978. It was proper for the judge to act upon the basis of the docket entry. The court's docket is an appropriate record of continuances granted. See Ark. Stat. Ann. § 22-117 (Repl.

1962). A court's records have a large degree of sanctity attached to them and are not to be lightly overturned. *Williams* v. *Alexander*, 140 Ark. 442, 215 S.W. 721. There was nothing before the court to overturn the record made.

If that record was correct, trial was imminent at the time, or there would have been no occasion for a motion for continuance by the defendant. The definite trial date set when the continuance was granted was well into a new term of court. After the continuance was granted the circuit judge was required to hold terms of court in Bradley County on the first Monday in February, 1978; in Drew County on the third Monday in February, 1978; in Cleveland County on the first Monday in March, 1978; and in Dallas County on the third Monday in June, 1978. The continuance resulted in a setting in the March, 1978, term of the Ashley Circuit Court and before the circuit judge had to commence a term of court in Dallas County.

We have indicated that a delay by reason of a continuance should not exclude a full term of court, if that can be avoided. *Matthews* v. *State*, 268 Ark. 484, 598 S.W. 2d 58. It is difficult to see how the exclusion of the October 1977 term might have been avoided. Thus, if the continuance was granted on motion of the defendant, he was brought to trial within three terms.

Appellant renewed his motion to dismiss on October 12, 1979. In this motion he reasserted his contention with reference to Rule 28 and added that he was materially prejudiced by the delay because several key witnesses for the defense were not available to testify and that their whereabouts were unknown to him. Appellant proffered his testimony as well as that of Bruce D. Switzer, appellant's former counsel, to controvert the docket entry. The trial judge declined to hear the testimony because it was not offered on September 28 and because the new motion had not been filed more than 10 days prior to trial. After the testimony was proffered, the trial judge stated that he denied the motion because of the docket entry, which was in the handwriting of the judge who then presided over the court, because the testimony should have been tendered on the date

of the first hearing and because the motion was filed too late.

We are not aware of any requirement that a motion to dismiss for denial of a speedy trial be made more than ten days before the date of trial. A failure to make the motion before trial would have constituted a waiver. See Rule 30.2, Arkansas Rules of Criminal Procedure, supra. The abstract of the record does not disclose that an omnibus hearing had been held in this case. Nevertheless, we cannot say that there was error in the denial of the motion. The state had met its burden by the docket entry. Appellant sought to overcome its effect by its own testimony and that of Switzer. The docket entry was not conclusive, and was subject to rebuttal by parol evidence. The trial judge would not be justified in his reliance upon it if had been refuted by unequivocal testimony, which was unrebutted. *Prout* v. *State*, 256 Ark. 723, 510 S.W. 2d 291.

We cannot say that the docket entry should have been overturned upon the proffered testimony. Appellant testified that Switzer had represented him until approximately October, 1978. Appellant testified unequivocally that he did not ask Switzer to postpone a trial date because appellant had been sick, or for any other reason. He said that he did not know where Trumann, Arkansas is and did not think he had ever been there. He said that he was living in Crossett on January 27, 1978. He admitted that he had had the flu but said that he did not report it to Switzer. Switzer testified that he did not recall having asked the court to continue the case in January, 1978, and that his file did not reflect that he had. He said that he did not recall the appellant's having been ill with the flu nor did he recall having any information about the appellant's having had the flu. Since it is clear that appellant had had the flu and the attorney only denied any recollection of having requested a continuance or any disclosure of such a request in his file, we cannot say that the record made on the docket should have been overturned.

We find no merit in appellant's contention that the court erred in denying his demurrer and motion to quash the information because it named Edgar Dupree and he was actually Edgar Dupree, Jr. That motion was filed at 1:00 p.m. on Oc-

tober 12, 1979, after the jury had been impaneled and sworn to try the case. Appellant testified that he had "turned himself in when it happened." Appellant admitted that he had been known as Edgar Dupree. Appellant's father, who was living, was also named Edgar Dupree.

We need not consider the denial of appellant's motion to quash the jury panel. It is highly unlikely that the particular situation of which appellant complained would arise again.

The judgment is reversed and the cause remanded.

Mr. Justice Hickman and Mr. Justice Mays dissent as to the remand.

DARRELL HICKMAN, Justice, concurring in part, dissenting part. I agree with the majority decision in all respects but one. I would dismiss the charges because of the lack of a speedy trial.

We have said many times that Rules of Crim. Proc., Rule 28, sets forth the outer limits of delay allowed in bringing a criminal defendant to trial. At the same time we have said we are bound by *Barker* v. *Wingo*, 407 U.S. 514 (1972) which defines the law regarding a speedy trial. It depends upon the length of delay, the reason for delay, the claim for a speedy trial, and prejudices that are caused by the absence of a speedy trial. We have never, to my knowledge, dismissed a case short of the term limits set forth in Rule 28 but I submit that this is a case for just that treatment. It fits all the criteria set forth in *Barker* v. *Wingo, id.*

There is no doubt that three terms of court had elapsed. The State offered no reason for the delay. A docket entry of dubious value is the basis of the majority's decision. Even if it is given credibility and an extra six months is granted to the State, the trial was not held soon enough.

I do not know why the State delayed this case. It may have had a weak case, docket problems, administrative problems, or whatever, but there was no justification given. That can only mean that the charges ought to be dismissed.

In *Alexander* v. *State*, 268 Ark. 384, 598 S.W. 2d 395 (1980), this court dismissed charges that had been pending less than seven months. The State should not be able to sit idly by expecting that their inaction will be approved.

MAYS, J., joints in this dissent.